**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JAMES C. EDWARDS, JR., | : | CIVIL ACTION NO. 09-1202 (MLC) |
| Petitioner, | : | **MEMORANDUM OPINION** |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

**COOPER, District Judge**

This matter comes before the Court on the pro se motion of James C. Edwards, Jr. ("petitioner") under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence for violation of supervised release. The underlying criminal case here was United States v. James Edwards, Crim. No. 04-884 (MLC). That case originated in the U.S. District Court for the Eastern District of Pennsylvania, and jurisdiction was transferred to this Court during the period of supervised release. The caption of the criminal action there was United States v. James Edwards, Crim. No. 95-494 (E.D. Pa.). For the reasons set forth herein, the Court will conduct an evidentiary hearing on one of the two issues raised in the pro se motion. Procedures will be followed to conduct that hearing according to the applicable rules.[1]

---

[1] A party seeking relief under 28 U.S.C. § 2255 is technically a movant rather than a petitioner for a writ of habeas corpus. See United States v. Sanders, 3 F.Supp.2d 554, 556-58 (M.D. Pa. 1998) (discussing differences between habeas corpus petitions under 28 U.S.C. §§ 2241 and 2254, and motions under 28 U.S.C. § 2255), aff'd, 165 F.3d 248 (3d Cir. 1999). We will refer to the movant as petitioner, for ease of reference.

# I.   PROCEDURAL HISTORY

The Section 2255 motion challenges the sentence of four years imprisonment, with no further supervised release, imposed by this Court on March 19, 2008.  On that date petitioner pleaded guilty and was sentenced on one count of violation of supervised release, consisting of having committed another state offense while on federal supervision.  The motion alleges, in its entirety, as petitioner's ground for relief:  "Ineffective assistance of counsel.  Counsel failed to file a direct appeal as I instructed him to do and relay to the Court about my concurrent sentences."  (Mot. ¶ 12.)  No brief accompanies the motion.[2]

---

[2]   Most of the documents that collectively make up the record pertaining to this case are docketed, either in this Section 2255 action or in the underlying federal criminal case that originated in the E.D. Pa. and was transferred to this Court during the period of supervised release.  Items that have been docketed in this Section 2255 action are cited by docket entry number as "dkt.", even if they were also docketed originally in one of the underlying criminal files.  Items docketed only on the public records of the underlying criminal files (E.D. Pa. Crim. No. 95-494 and D.N.J. Crim. No. 04-884) are cited by reference to the deciding court, for example, "E.D. Pa. dkt. 5" or "D.N.J. dkt. 5."

Certain documents are not filed on the public dockets, but are maintained in chambers according to applicable court rules and are cited herein where relevant.  For example, a presentence report and the parties' sentencing briefs are not typically docketed, nor are sentencing hearing exhibits.  The parties had copies of those materials during the proceedings, and such items cited here are maintained in chambers for access as appropriate.

The docket in this Section 2255 action begins with the Section 2255 motion itself, filed on the above-captioned docket on 3-17-09 ("Mot.", dkt. 1).  That docket includes the following: Miller Notice and Order (dkt. 3); letter from petitioner responding to Miller Notice and Order with no change (dkt. 4); Order filed 6-11-09 directing respondent to answer within 45 days and providing 30 days after receipt of Answer for petitioner to

The motion papers, and the files and records of the
underlying criminal case, set forth the pertinent procedural
history as follows.  On September 7, 1995, a grand jury in the
Eastern District of Pennsylvania returned a four-count Indictment
charging petitioner with two counts of distribution of cocaine
base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1), and
two counts of distribution of cocaine base within 1,000 feet of a
playground, in violation of 21 U.S.C. §§ 841(a)(1) and 860.
(E.D. Pa. Presentence Report dated 3-27-97 ("PSR") ¶ 1.)  On

---

file reply (dkt. 5); respondent's Answer filed 7-21-09 ("Ans.",
dkt. 6), with exhibits A-C (copies of some docketed items).
    The docket sheet for E.D. Pa. Crim. No. 95-494 includes
entries for the Judgment of Conviction ("E.D. Pa. Judgment")
filed 3-17-98 (E.D. Pa. dkt. 72); Notice of Appeal from the
Judgment, filed 3-26-98 (E.D. Pa. dkt. 75); transcript of 3-12-98
sentencing hearing filed 5-7-98 (E.D. Pa. dkt. 78); Judgment of
USCA affirming judgment of E.D. Pa. filed 1-19-99 (E.D. Pa. dkt.
80); and transfer of probation jurisdiction to D.N.J. filed 1-20-
05 (E.D. Pa. dkt. 83).
    The docket in D.N.J. Crim. No. 04-884 includes Order of
Transfer filed 12-16-04 (D.N.J. dkt. 1); transfer of jurisdiction
completed on 1-25-05, with receipt of certified copies of
Superseding Indictment, E.D. Pa. Judgment, and E.D. Pa. Docket
Sheet (D.N.J. dkt. 2); Petition and Order for arrest warrant for
violation of supervised release filed 12-14-07 (D.N.J. dkt. 3);
Minute entry for initial appearance on 2-13-08, with Federal
Public Defender representing petitioner and not guilty plea
entered (D.N.J. dkt. 4); Minute entry for hearing on Violation of
Supervised Release ("VOSR") on 3-19-08, with same counsel
representing petitioner; guilty plea entered to Violation #1 and
sentencing conducted (D.N.J. dkt. 8); Judgment filed 4-25-08
("VOSR Judgment", D.N.J. dkt. 9); letter from petitioner dated 2-
25-09, received in chambers on 3-3-09, and filed on 3-5-09,
requesting a 2255 form (D.N.J. dkt. 10); and transcript of VOSR
hearing of 3-19-08, filed 4-6-09 (D.N.J. dkt. 11).  (The Section
2255 Motion ("Mot.") was filed under separate civil docket
number, in this captioned action, on 3-17-09 (dkt. 1).)

November 17, 1995, the U.S. Attorney's Office filed an Information To Establish Prior Convictions, pursuant to 21 U.S.C. § 851, based upon a prior conviction on a drug distribution offense.  (Id. ¶ 2.)[3]  On December 7, 1995, a Superseding Indictment was returned, adding one more count under each of the same two offense statutes, for a total of six counts.  (Id. ¶ 1.) On December 16, 1996, pursuant to a written plea agreement, petitioner pled guilty to the three counts of the Superseding Indictment that charged three separate incidents of distribution of cocaine base within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1) and 860.  (Id. ¶ 3; see Superseding Indictment, D.N.J. dkt. 2 at 21-26.)

Sentencing was conducted by Hon. Robert S. Gawthrop, III on March 12, 1998.  (E.D. Pa. Judgment, D.N.J. dkt. 2 at 27.)  The Court found a total offense level of 34 and Criminal History Category VI, resulting in a Guideline range of 262-327 months

---

[3]  That section provides in pertinent part:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States Attorney files an information with the court ... stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1).

4

imprisonment.  (Id. at 32.)[4]  Each of the three counts of conviction carried a maximum term of life imprisonment, with a mandatory minimum of 10 years imprisonment, pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 860.  (PSR ¶ 76.)  There was also a mandatory minimum term of 16 years supervised release.  (Id. ¶ 79.)  However, the government moved for downward departure at the sentencing hearing, pursuant to USSG § 5K1.1, which the Court granted.  (E.D. Pa. Judgment, D.N.J. dkt. 2 at 32.)  Petitioner received a sentence of 78 months imprisonment on all three counts of conviction, to be served concurrently.  (Id. at 28.)  It included an 8-year term of supervised release.  (Id. at 29.)

---

[4]  The guideline calculation, using the Nov. 1, 1996 Guidelines Manual, was as follows:  Petitioner pled guilty to Counts Two, Four and Six of the Superseding Indictment, charging distribution of cocaine base within 1,000 feet of a playground, in violation of 21 U.S.C. § 860.  He stipulated to a total of approximately 41.52 grams of cocaine base (crack cocaine).  The base offense level was 32 under USSG § 2D1.2 (two levels, plus the offense level from the applicable section of USSG § 2D1.1, which was level 30 for an offense involving at least 35 grams but not more than 50 grams of cocaine base).  He did qualify for a 3-level downward adjustment for acceptance of responsibility under USSG §§ 3E1.1(a) and (b).  However, he also qualified for career offender status under USSG § 4B1.1.  If the offense statutory maximum had been 25 years or more, but not life, the career offender offense level under USSG § 4B1.1 would have been 34, and the total offense level would have been 31.  The Court ruled instead that his total offense level was 34 after application of the 3-level downward adjustment for acceptance.  That was based upon offense level 37 under USSG § 4B1.1 for an offense statutory maximum of life imprisonment.  (See PSR ¶¶ 1-5, 24-35; E.D. Pa. Judgment, D.N.J. dkt. 2 at 32.)  He had 19 criminal history points, establishing Criminal History Category VI.  (PSR ¶¶ 36-48.)  The resulting guideline range for imprisonment was 262 to 327 months.  (Id. ¶ 77; E.D. Pa. Judgment, D.N.J. dkt. 2 at 32.)

Despite having received a departure below the mandatory minimum terms of imprisonment and supervised release, petitioner appealed the sentence, arguing that his statutory penalties under 21 U.S.C. § 841(b) could not be enhanced, pursuant to 21 U.S.C. § 851(a)(2), because his prior drug felony convictions were not prosecuted by indictment.  (Those offenses were prosecuted under Pennsylvania's felony complaint system rather than a grand jury indictment system.)  The Court of Appeals affirmed on November 19, 1998, based upon United States v. Lynch, 158 F.3d 195 (3d Cir. 1998).  (USCA Mem. Op., USCA No. 98-1244, filed 11-19-98.)[5] Lynch, decided while petitioner's case was on appeal, addressed the identical issue and rejected that argument.  Petitioner sought rehearing en banc, which was denied by order filed January 7, 1999.  (USCA Order Sur Petition for Rehearing, USCA No. 98-1244, filed 1-7-99.)  He did not file a motion under Section 2255 further challenging that conviction or sentence.  (D.N.J. dkt. 2 at 19.)

---

[5]  The opinion of the Court of Appeals states in its entirety as follows:

> The issue before us is whether the statutory maximum penalties under 21 U.S.C. § 841(b) can be enhanced pursuant to § 851(a)(2) because of a defendant's prior drug felony convictions, when the defendant was not prosecuted by indictment for the prior offenses.  On October 15, 1998, we decided United States v. Lynch . . . which addressed the identical issue and binds our decision in this case.  For the foregoing reasons, the judgment of the district court will be affirmed.

(Id. at 2.)

6

Petitioner's term of supervised release under the E.D. Pa. Judgment commenced on September 8, 2004.[6]  However, because he was residing in Camden, New Jersey, this Court consented to a transfer of probation jurisdiction to the District of New Jersey, by Order effective December 16, 2004.  (D.N.J. dkt. 1.)  The standard conditions of his supervised release included requirements that he not leave the judicial district where he was being supervised without permission from the Probation Officer or the Court, and that he not commit another federal, state or local crime.  (Violation of Supervised Release Report dated 1-24-08 ("VSR") at 2-3.)

On September 7, 2007, new criminal complaints were filed against petitioner in the Pennsylvania Court of Common Pleas, Bucks County ("Pennsylvania Court"), stemming from an incident on that date in Bristol, Pennsylvania.  (Id. at 2.)  On November 13, 2007, petitioner appeared in that court and entered a not guilty plea, and trial was set for January 8, 2008.  (Id.)

A petition alleging violations of his federal supervised release was filed against petitioner in this Court on December

---

[6]  There is a Report and Order filed 10-22-03 on the E.D. Pa. docket, directing that the federal supervised release be tolled effective 2-1-02, and recommence upon petitioner's release from New Jersey state custody.  (D.N.J. dkt. 2 at 19.)  The United States Probation Office later advised this Court that petitioner was released from New Jersey state custody on 9-8-04, at which time his federal supervised release under the E.D. Pa. Judgment commenced.  (Violation of Supervised Release Report dated 1-24-08 at 1.)

14, 2007.  (VOSR Petition, D.N.J. dkt. 3.)  All four of the alleged violations related to the September 7, 2007 incident in Bristol, Pennsylvania.  The conditions of federal supervised release allegedly violated were:

> 1.   You shall not commit another federal, state, or local crime.
>
> 2.   You shall not leave the judicial district without the permission of the Court or Probation Officer.
>
> 3.   You shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.
>
> 4.   The defendant shall not possess a firearm or destructive device.

(Id. at 1-2.)

Petitioner appeared in the Pennsylvania Court on January 8, 2008, and entered a guilty plea to certain of the charges pending there.  (Id. at 3.)  That disposition was relevant to the VOSR Petition then pending in this Court, and counsel for both parties here in the VOSR matter submitted briefs and exhibits on that topic.  Those materials are described in the margin.[7]  This Court

---

[7]   The records from the Pennsylvania Court proceeding were submitted and discussed by the parties in their VOSR briefing materials, and at the VOSR hearing conducted in this Court on 3-19-08.

The government submitted a letter brief dated 3-11-08, with attached copies of documents marked Exhibits A-F.  Exhibit A was petitioner's federal PSR dated 3-27-97.  Exhibit B was petitioner's federal Judgment of Conviction dated 3-13-98 [filed 3-17-98].  Exhibit C was a Police Criminal Complaint ("PA Complaint") filed in the Pennsylvania Court dated 9-7-07, including Affidavit of Probable Cause (4 pages).  Exhibit D was a criminal Information ("PA Information"), filed in the Pennsylvania Court on 11-13-07, charging petitioner with six enumerated offenses allegedly committed on the incident date, 9-

thus carefully reviewed those Pennsylvania Court records, as well as petitioner's underlying federal criminal case file, in adjudicating the VOSR Petition here.

The Pennsylvania Court records established that on January 8, 2008, the Pennsylvania Court accepted petitioner's guilty plea to the following state charges relating to the September 7, 2007 incident:  simple assault (count 2), possessing an instrument of crime with intent to employ it criminally (count 3), recklessly endangering another person (count 4), and disorderly conduct (counts 5 and 6).  (PA Plea Hearing at 4-6; PA Sen. Hearing at 4-

---

7-07 (2 pages).  Exhibit E was the transcript of the guilty plea hearing in the Pennsylvania Court ("PA Plea Hearing") on 1-8-08 (10 pages).  Exhibit F was the transcript of the sentencing hearing in the Pennsylvania Court ("PA Sen. Hearing") on 2-11-08 (13 pages).

The petitioner submitted a letter brief dated 3-14-08 ("VOSR Br."), with attached copies of documents marked Exhibits 1 and 2. Exhibit 1 was the same 9-7-07 Affidavit of Probable Cause that was page 4 of the PA Complaint.  That affidavit was signed by the responding police officer at the scene of the 9-7-07 incident. It named the victim as Herbert Lyals, and described Lyals's statement that the perpetrator was petitioner.  Exhibit 2 was a notarized statement by the victim, Herbert Lyals, dated 9-27-07, denying any knowledge of petitioner and stating that petitioner was not present on the day of the alleged 9-7-07 incident, and Lyals would not be pressing charges.

Defense counsel also submitted documents at the VOSR hearing conducted by this Court on 3-19-08.  Those documents, obtained from the Pennsylvania Court, consisted of:  (1) the same 9-7-07 Police Criminal Complaint with attached Affidavit of Probable Cause (4 pages); and (2) Police Incident Report re: 9-7-07 incident (6 pages on assorted form sheets).

The Probation Office also submitted a document at the VOSR hearing on 3-19-08, which was a Criminal Court Sheet dated 2-11-08.  It was essentially a judgment containing an abstract of the Pennsylvania Court case and sentence imposed (2 pages including fax cover sheet).

5.)   The most serious of the admitted offenses was count 3, a
first degree misdemeanor that carried a maximum penalty of five
years imprisonment and $10,000 fine.   (See PA Plea Hearing at 4;
PA Sen. Hearing at 9-10.)   As part of the oral plea agreement in
that case, as represented to the court at the plea hearing, the
prosecutor agreed to withdraw two felony counts of aggravated
assault (counts 1 and 7), which carried much higher penalties,
and petitioner agreed that his sentence under that guilty plea
would run consecutive to any sentence he would receive for
violation of his federal supervised release in the District of
New Jersey.   (PA Plea Hearing at 7; PA Sen. Hearing at 3-5.)

The Pennsylvania Court imposed sentence in its case on
February 11, 2008.   The sentence was based on count 3, possessing
an instrument of crime with intent to employ it criminally, in
violation of 18 PA. Crim. Code § 907(a).   Petitioner was
sentenced on count 3 to state imprisonment for one to three
years, "consecutive to any sentences received in New Jersey or in
federal court."   (PA Sen. Hearing at 9-10.)   The quoted reference
to New Jersey courts is explained in the margin.[8]   He was also

---

[8]   At the time of the 9-7-07 incident in Pennsylvania that
prompted this Court to issue a VOSR Petition, petitioner was also
under Supervision for Life monitored by the New Jersey State
Parole Division, as a result of a New Jersey conviction for
endangering the life of a child.   On 12-11-07, the New Jersey
Parole Division detained petitioner on a warrant as a result of
the Pennsylvania 9-7-07 incident, because it would be a violation
of the terms of his New Jersey lifetime supervision.   That matter
was still pending in New Jersey court at the time of the PA

sentenced to two years of "probation consecutive to the parole on this case." (Id. at 10.)  As to the post-release probation period, however, the Pennsylvania Court specified that it could be served "concurrently with any probation or its equivalent then being served."  (Id.)

The Pennsylvania Court summed up its February 11, 2008 sentencing decision on this point, stating as follows:

> It is my intent by this sentence as follows:  The one to three years which I have imposed as a state sentence is to be served consecutive to any sentence of incarceration that is imposed in federal court or in New Jersey state court.  However, with regard to the probation which I've imposed consecutive to my sentence, I intend either that Mr. Edwards be supervised on my probation or concurrent with any probation that he may then be serving.  And I am aware, obviously, that probation is called probation in New Jersey, but it is called supervised release in federal court.  And I am trying by this sentence to make sure that there be a supervisory period during which Mr. Edwards will be supervised either under my sentence or concurrently with any other sentence of probation that he is then serving.  And that's it.
> ....
> While everyone is still here, I want to make sure there's one thing clear, and ... that is that I had mentioned the word "probation," and that the probation I impose is to be concurrent with any probation or its equivalent that Mr. Edwards is then serving.  I mean by that also if he is serving a parole sentence, then my probation to be concurrent with that parole.  It's any supervisory sentence outside of jail time.

(PA Sen. Hearing at 11-13.)  The Criminal Court Sheet setting

---

Sentencing Hearing on 2-11-08, and at the time of the VOSR hearing in this Court 3-19-08.  The sentencing judge in Pennsylvania was referring to those proceedings pending in both state and federal court in New Jersey when he imposed the Pennsylvania sentence on 2-11-08.  (See PA Sen. Hearing at 3-13.)

forth the sentence, filed that same day, similarly stated that the term of imprisonment of not less than 1 year nor more than 3 years was to be "[c]onsecutive to any sentences imposed as violation of state of NJ and federal cases, directly or indirectly," "plus a 2 year consecutive probation."  "The probation may be served concurrently with any probation/parole or equivalent then being served at the time of his parole on this case."  It also contained the notation "NFP remaining counts", indicating that the sentence on count 3 was dispositive of the case, and no further penalty was imposed on the remaining counts of conviction.  (2-11-08 Criminal Court Sheet, see n.7 supra; PA Sen. Hearing at 11; and 3-19-08 VOSR Transcript, D.N.J. dkt. 11 at 20.)

The hearing on petitioner's charges for violation of federal supervised release was conducted in this Court on March 19, 2008.  (D.N.J. dkt. 8.)  In preparation for the hearing, the Court and counsel for the parties received the VSR.  It recommended that petitioner's Pennsylvania offense of possessing an instrument of crime with intent to employ it criminally would constitute a Grade A violation of supervised release.  (VSR at 3.)  That would be based upon a finding that the offense was "conduct constituting (A) a ... state ... offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence," as defined in the Guidelines.  USSG §7B1.1(a)(1) and comment n.2.

The VSR also recommended that petitioner's guideline range be based upon a finding that his underlying federal offenses of conviction were class A felonies.  (VSR at 1, 4.)  See 18 U.S.C. § 3559(a)(1) (defining class A felony as offense not specifically classified by a letter grade in the section defining it, where the maximum term of imprisonment is life imprisonment or death). This topic is discussed infra Sec. II.

The determination of felony class would affect two aspects of petitioner's potential sentence.  First, it would set the statutory maximum term of imprisonment for a violation of supervised release at 5 years for a class A felony, whereas the maximum would be 3 years for a class B felony.  See 18 U.S.C. § 3583(e) ("a defendant whose [supervised release] term is revoked ... may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, [or] more than 3 years in prison if such offense is a class B felony....").  Second, it would create a recommended guideline range of 51-60 months for petitioner, if the violation itself were a Grade A violation of supervised release.  That calculation is explained in the margin.[9]

---

[9]  Petitioner was in Criminal History Category VI when originally sentenced in the E.D. Pa. on 3-12-98.  (See E.D. Pa. Judgment, D.N.J. dkt. 2 at 32.)  That criminal history category would also apply to his sentencing for violation of supervised release.  USSG § 7B1.4(a)* ("The criminal history category is the category applicable at the time defendant originally was sentenced to a term of supervision.")  The Guidelines Policy

Both parties submitted pre-hearing briefs and other materials.  See n.7 supra.  This Court conducted a full plea hearing on March 19, 2008, before accepting petitioner's guilty plea, during which it advised petitioner of the penalties he faced for each of the alleged violations.  (3-19-08 Transcript, D.N.J. dkt. 11 at 3-26.)  A pertinent portion of the VOSR plea hearing is the following exchange between this Court and petitioner:

> Q.   Okay.  Let's look at what the statutory limits are here.  It [the VSR] does indicate that if your supervised release is revoked, as a result of any of these violations, you are facing a maximum statutory penalty of five years imprisonment....  If the Court did sentence you to something less than the statute five year maximum of imprisonment, then certainly the Court could have you serve out the balance of that term on supervised release.  Understood?
>
> A.   Yes, ma'am.
> ....
> Q.   Now the Court would have to decide whether violation number 1 is a grade B or a grade A violation, Mr. Edwards.  But I can't tell you how the Court would rule on that until we get to sentencing.  So the maximum sentence that you would be facing would be five years of imprisonment on this violation if you plead guilty to alleged violation number 1.  And your guideline range would be 51 to 60 months, if it is ... found to be a grade A violation.  And, of course, I have already given you the guideline ranges for the grade B and grade C --

_____

Statement for a term of imprisonment upon revocation of supervised release is a table.  It recommends a range of 21-27 months for a Grade B violation in Criminal History Category VI. In that same criminal history category, if the violation is a Grade A violation the range is 33-41 months, except the range goes to 51-63 months if the underlying conviction was a Class A felony.  USSG § 7B1.4(a)  The latter range would, of course, be reduced to 51-60 months due to the 5-year statutory maximum in 18 U.S.C. § 3583(e).  See USSG § 7B1.4(b)(1).

A.   Yes.

Q.   -- violations.  Bearing in mind that those are only recommendations, so the Court could still sentence you to the full five years --

A.   Yes.

Q.   -- if you are in violation of supervised release on any level violation.

A.   Yes.

(Id. at 13-14.)[10]

The VOSR plea hearing also covered with petitioner the fact that the imprisonment sentence imposed by the Pennsylvania Court was expressly set to run consecutive to any sentence of imprisonment he would receive from this Court for his violation of federal supervised release.  The following excerpt of the VOSR plea hearing addressed that topic:

BY THE COURT:

Q.   Have you discussed with your attorney your array of options and how to respond to this petition, sir?

A.   Yes.

Q.   Are you satisfied at this time with the advice and representation of [the Assistant Federal Public Defender ("AFPD")] in this case?[11]

A.   Yes, ma'am.

Q.   Have you been provided with this entire violation of supervised release report to review and discuss with you?

A.   Yes.

---

[10]   When quoting transcripts we have corrected obvious clerical errors without so noting, and without making any material changes to the quoted text.

[11]   Petitioner was represented in this Court by an AFPD, who will be referred to as "AFPD".  (See D.N.J. dkt. 6, 8, 11 at 1.)

Q.   Have you also been provided with the briefs that
your lawyer has sent to the Court in preparation for
this?

A.   Yes, ma'am.

Q.   That was one brief, it was March 14, 2008.  And
you have gotten that one, right?

A.   Yes.

Q.   Okay.  And then the government also did a brief,
it is dated March 11, 2008.  It is a letter brief but
it has five exhibits attached, A through F.  Have you
seen that as well?

A.   Yes.  It is six.

Q.   What?

A.   Yes, ma'am.

Q.   Six exhibits, A through F.  You have seen all of
that, right?

A.   Yes.

Q.   We have also gotten some kind of a criminal court
sheet faxed through to us from Bucks County criminal
court.  I don't know that you need to inspect that, but
it is available for your inspection.  You know what it
is?  It is the sentence in your Pennsylvania Case.
That is what it is.  Which was, this judgment in Bucks
County, criminal court, is dated February 11, 2008.  So
that is the resolution of that set of charges over
there.  Do you have a copy of that?

A.   Yes, ma'am.

     THE COURT:  [AFPD], do you have a copy of that in
front of you?

     AFPD:  Yes, your Honor.

     THE COURT:  Can you discern and tell us for the
record, tell us slowly, please, what sentence Mr.
Edwards received from the Pennsylvania state court Judge
on the charges that resulted in his being brought up on
these violation of supervised release allegations?

     AFPD:  Well, your Honor, we have the benefit of
the transcript which actually sort of interprets what
we see on this judgment here.

     THE COURT:  Can you put that together for us and
just state for the record what he got.

16

AFPD:  Yes.

AFPD:  To quote the Court, your Honor, page 9 of the transcript, "On information 7502 of 2007, Commonwealth versus James Edwards, on count 3, possessing an instrument of crime, it is the sentence of this Court that you undergo incarceration in a state correctional institution for a period of not less than one nor more than three years.  And I will begin that case and order that you receive credit from January 2nd, 2008.  Now, I order that this one to three year sentence is to be served consecutive to any sentences received in New Jersey or in federal court.  In addition, I impose a two-year period of probation consecutive to the parole on this case.  And the unusual part of this is going to be that probation, and just the probation, may be served concurrently with any probation or its equivalent then being served.  And I'm going to put this on the record, because I know that we will make a copy of the record as follows.  Let me just finish the sentence, however.  I'm also ordering in this case, Mr. Edwards, that you not have any contact, directly or indirectly, by yourself or though anyone else, with the victim in this case or with any member of the victim's family.  I also order that you pay the costs of prosecution.  I grant the nol-pros of counts 1 and 7, and there's no further penalty to the information.  It is my intent by this sentence as follows:  The one to three years which I have imposed as a state sentence is to be served consecutive to any sentence of incarceration that is imposed in federal court or in New Jersey state court.  However, with regard to the probation which I have imposed consecutive to my sentence, I intend either that Mr. Edwards be supervised on my probation or concurrent with any probation that he may then be serving.  And I am aware, obviously, that probation is called probation in New Jersey, but it is called supervised release in federal court.  And I am trying by this sentence to make sure that there be a supervisory period during which Mr. Edwards will be supervised either under my sentence or concurrently with any other sentence of probation that he is then serving.  And that's it."

THE COURT:  Thank you, [AFPD].

(Id. at 14-17.)

17

Following that colloquy on the record here on March 19, 2008, petitioner pled guilty to Violation Number One, which was violation of the condition of supervised release that he not commit another federal, state, or local crime, based upon his recent conviction in the Pennsylvania Court.  (Id. at 18-26.)

Petitioner proceeded to sentencing that same day, and counsel for both sides argued their positions set forth in their pre-hearing briefs.  Those briefs, and the oral arguments, addressed the two legal issues relevant to sentencing that petitioner's counsel raised at the hearing:  that his (1) underlying federal convictions under 21 U.S.C. §§ 841(a)(1) and 860 were not class A felonies; and (2) new Pennsylvania criminal conduct did not constitute a "crime of violence," under the Guidelines, and thus was not a Grade A violation.  (See n.7 supra; 3-19-08 Transcript, D.N.J. dkt. 11 at 26-30.)

This Court ruled that the violation of supervised release to which petitioner pled guilty was a Grade B violation.  We concluded that his recent Pennsylvania offense was not a "crime of violence," within the meaning of USSG § 7B1.1(a)(1)(A)(i). (3-19-08 Transcript, D.N.J. dkt. 11 at 30-33).  We further ruled that based upon a Grade B violation in Criminal History Category VI, his recommended guideline range for imprisonment was 21-27 months.  (Id. at 33-34.)  See n.9 supra.[12]

---

[12]  We thus agreed with petitioner's contention that the violation of supervised release to which he pled guilty was a Grade B violation.

The Court did not agree with petitioner's contention that his underlying federal conviction was for class B felonies.  We ruled that his Presentence Report in the underlying criminal case had correctly described his convictions on Counts Two, Four and Six of the Superseding Indictment as class A felonies, because the maximum statutory imprisonment for each was life imprisonment.  We also ruled that the enhancement under 21 U.S.C. § 841(b)(1)(B) that was imposed at petitioner's original sentencing in this case, under the procedures in 21 U.S.C. § 851, properly raised his statutory term of imprisonment for the underlying offenses to a minimum of ten years and a maximum of life imprisonment.  Based upon those rulings, we concluded that his underlying offenses in this case were class A felonies.  (3-19-08 Transcript at 34-35.) We stated that those rulings produced an advisory guideline range of 21-27 months for his violation of supervised release, and a statutory maximum imprisonment term of 5 years.  (Id. at 35.)

The parties then argued their contentions about an appropriate sentence for petitioner's violation of supervised release.  The government argued that a sentence of 5 years imprisonment would be reasonable, for reasons including the significant 5K1.1 downward departure that he had received in his original sentence, and the particular seriousness of the recent Pennsylvania incident in light of the conditions of his federal supervision.  (Id. at 36-37.)  Defense counsel argued for a

19

variance below the 21-27 month guideline range, emphasizing his
compliance with supervised release for approximately 3 1/2 years,
and suggesting that the recent Pennsylvania conviction reflected
an isolated unfortunate incident.  (Id. at 37-38; VOSR Br. at 2-
3.)  Petitioner addressed the Court and apologized for his
conduct, expressed his remorse, and stated that he accepted
responsibility for, as he put it, leaving the state and getting
into a fight.  (3-19-08 Transcript at 38.)

   This Court imposed sentence under 18 U.S.C. § 3583(e), and
its cross-reference to portions of the federal sentencing
statute, 18 U.S.C. § 3553(a).  (Id. at 30, 39-43.)[13]

---

[13]  The pertinent portion of Section 3583 provides:

The court may, after considering the factors set forth
in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D),
(a)(4), (a)(5), (a)(6), and (a)(7) --
....
     (3)  revoke a term of supervised release, and
require the defendant to serve in prison....

18 U.S.C. § 3583(e).

The enumerated factors of Section 3553 include:

(a)(1)  the nature and circumstances of the offense and the
history and characteristics of the defendant;
(a)(2)  the need for the sentence imposed --
...
     (B)  to afford adequate deterrence to criminal
     conduct;
     (C)  to protect the public from further crimes of
     the defendant;
...
(a)(4)  the kinds of sentence and the sentencing range
established for --
...

20

Here we quote verbatim the sentencing decision of this Court on March 19, 2008:

> I am going to impose a four-year sentence on Mr. Edwards.  Not five years.  I guess this would be considered a departure upward from the advisory guideline range of 21 to 27 months.  I don't guess; I can see that, right here on the page.  7B1.4(a).  I do think, however, that it is warranted in this case, and in fact it may be a bit lenient.

> He is facing a statutory maximum of five years imprisonment for this violation.  And he had, he had eight years of supervised release to serve to the underlying conviction here.  Eight years.  He wouldn't have even gotten out of supervised release for the underlying conviction until the year 2012.  So he can complete his service of imprisonment for approximately those four years instead of remaining out on supervised release, this being the year 2008.

> The basis for this sentence is, it is the entire criminal history as well as personal history of Mr. Edwards, along with the offense conduct that constitutes the violation in this case.

> Mr. Edwards is in Criminal History Category VI, which is for 13 points or more, criminal history points, but as of the time he was sentenced for the offense in this case in 1998, he already had 19 criminal history points by guideline calculations and he was already a career offender, which would have placed him, did place him, in Criminal History Category VI anyway.

> Significantly, most of those crimes were committed in Bucks County, Pennsylvania.  He has been a repeat offender in Bucks County, Pennsylvania, since his earliest adult conviction -- no, I take that back.  His earliest adult conviction was in Camden where he has

---

> (B)  in the case of a violation of ... supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission...;
> ... [and]
> (a)(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct....

18 U.S.C. § 3553.

also lived, but his string of subsequent convictions, down through his ages late twenties and early to mid-thirties, were all in Bucks County, Pennsylvania.

In New Jersey he has a conviction, a state court conviction, for endangering the welfare of a minor for which he is serving lifetime supervision, and is a Megan's Law tier 2 offender, we are told in the report.

In Bucks County, he was in continual criminal justice system involvement all through his twenties and thirties and he served significant incarceration over there on several occasions.  So the fact that he was on probation here in New Jersey, having been sentenced in this case in the Eastern District of Pennsylvania on a drug distribution offense that occurred in Pennsylvania, Bucks County, means that ... the District of New Jersey, Probation Department, had a very strong interest in keeping Mr. Edwards within the confines of the State of New Jersey -- as he was required to do as one of his conditions of probation [sic:  supervised release].

It is no trifling matter, therefore, that Mr. Edwards left the state without Probation permission, and got himself into an altercation back over there in Bucks County.  And, as reflected in the Violation of Supervised Release Report, he was making regular forays back over to the Levittown area, in fact, boasted that he had a paramour over there that he was visiting regularly.  He did get into an altercation of some sort, which was the reason for his being charged in Bucks County on the conduct that underlies this violation.  And we need not consider the underlying nature of that except that he pleaded guilty to possession of an instrument of a crime with intent to use it.

This is an individual who has repeatedly in his past criminal history been found in violation of conditions of probation for periods of supervision relating to state court convictions.  He has now demonstrated that he cannot be controlled by the conditions of supervised release that were imposed upon him after a 78-month term of imprisonment imposed in this case, despite the fact that 8 years of supervised release were imposed precisely for the purpose of supervising his conduct to be law-abiding in the community.

Yes, he complied in some respects with his conditions of supervised release and even attempted to work.  But he was also simultaneously betraying the conditions of supervised release, which came to light of course when

he was arrested over there in Pennsylvania and the rest
of the events that bring him back here for sentencing.

This Court will not continue supervised release of Mr.
Edwards after he serves this sentence.  I note that the
sentencing judge in the most recent conviction in
Pennsylvania imposed two years of probation following
his term of incarceration for that offense.  And we
also note that he is, as I said, already under life
supervision under the authority of the State of New
Jersey.

These are the reasons for the sentence and the
justification.  If there are no questions, I will
impose the sentence at this time.

     [GOVERNMENT COUNSEL]:  No, your Honor.

     THE COURT:  Questions?

     [AFPD]:  No, your Honor.

     THE COURT:  In this matter of United States vs.
James Craig Edwards, Jr., the Court has found him
guilty on alleged violation number 1, based upon his
plea of guilty to that violation, and the Court has
found his advisory guideline range based upon Grade B
violation, Criminal History Category VI, and the Court
has found his statutory maximum for imprisonment based
upon a finding of a class A felony in the underlying
case, and the Court has found that this case warrants
an upward departure, particularly in view of the facts
that we have now recited on the record; and relying
also upon Application Note 4 to Guideline Section
7B1.4, which is directly on point because the original
sentence was the result of a major downward departure
... for substantial assistance.  And the sentence is
therefore imposed, 48 months of incarceration, and
supervised release is revoked.

(Id. at 39-44.)

As soon as the sentence was imposed, the Court advised

petitioner on the record of his right to appeal.  That discussion

was as follows:

     [GOVERNMENT COUNSEL]:  Your Honor, I just ask that the
Court advise Mr. Edwards on the record of his right to
appeal.

THE COURT:  Mr. Edwards, you do have a right to appeal the sentence.  Even though you pled guilty, you have the right to appeal the sentence.  If you wish to appeal the sentence, you must file a notice of appeal within the short time provided by the rules.  If you can't afford the cost to file a notice of appeal or have counsel to represent you on such appeal, you can request the Court to provide those services and the services will be provided without charge.

You have to make sure the notice gets filed, and it gets filed.  [The AFPD] will help you through the process to get the notice filed.  Is that correct, [AFPD]?

[AFPD]:  Yes.

(Id. at 43.)

The VOSR plea and sentencing hearing was completed on March 19, 2008.  The VOSR Judgment was filed on April 25, 2008. (D.N.J. dkt. 9.)  Petitioner did not appeal or otherwise communicate with this Court until approximately ten months later, when the Court received a letter from him dated February 25, 2009, requesting a Rule 2255 form.  (D.N.J. dkt. 10.)  The Clerk mailed a form to him.  (Id.)

This motion under 28 U.S.C. § 2255 was filed on March 17, 2009, which was timely under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1).  (Dkt. 1.)  The Court issued a Notice and Order pursuant to United States v. Miller, 197 F.3d 644 (3d Cir. 1999).  (Dkt. 3.)  Petitioner responded that he would keep his Section 2255 motion unchanged, as filed.  (Dkt. 4.)  The Court issued an Order to Answer, giving the government 45 days to answer, and providing petitioner with 30 days to file a reply after his receipt of the Answer.  (Dkt. 5.)  Respondent

24

filed its Answer on July 21, 2009.  Petitioner filed no reply,
and the existing record for purposes of reviewing the motion is
complete.  See n.2 supra.

## II. DISCUSSION

Under 28 U.S.C. § 2255:

> A prisoner in custody under sentence of a [federal]
> court . . . claiming the right to be released upon
> the ground that the sentence was imposed in
> violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction
> to impose such sentence, or that the sentence was
> in excess of the maximum authorized by law, or is
> otherwise subject to collateral attack, may move
> the court which imposed the sentence to vacate, set
> aside or correct the sentence.

28 U.S.C. § 2255(a).  This Court has jurisdiction under 28 U.S.C.
§ 1331.  Petitioner has the burden of establishing any claim
asserted in the motion.  United States v. Abbott, 975 F.Supp.
703, 705 (E.D. Pa. 1997).

Here we again quote petitioner's asserted claims of
ineffective assistance of counsel, as set forth on the Section
2255 motion form:

12.  GROUND ONE:  "Ineffective assistance of Counsel."

(a)  Supporting facts:
     "Counsel failed to file a direct appeal as I
instructed him to do and relay to the Court about
my concurrent sentences."

(Mot., dkt. 1 at 5.)

The relief sought in the motion is "Reconsideration and have
my sentences ran concurrent."  (Id. at 14.)

Reading petitioner's pro se motion liberally, as is appropriate, Haines v. Kerner, 404 U.S. 519 (1972), we surmise that it asserts two Sixth Amendment claims of ineffective assistance of counsel with respect to the sentence imposed by this Court on March 19, 2008 for his violation of supervised release.  First, petitioner alleges that he instructed his counsel to file a direct appeal, and counsel failed to do so.  Second, he asserts that his counsel was ineffective for failing to argue that his federal VOSR sentence of imprisonment should run concurrent with the sentence of imprisonment imposed by the Pennsylvania Court on February 11, 2008.  (Mot., dkt. 1 at 5.)

Petitioner asserts his claims under a theory of ineffective assistance of counsel.  The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  "A defendant has a Sixth Amendment right not just to counsel, but to 'reasonably effective assistance' of counsel." United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). The Supreme Court in Strickland has set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance

> prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is
> reliable.  Unless a defendant makes both showings,
> it cannot be said that the conviction or death
> sentence resulted from a breakdown in the adversary
> process that renders the result unreliable.

Strickland, 466 U.S. at 687.  As with any other claim under 28

U.S.C. § 2255, the burden of proving ineffective assistance of

counsel is on the petitioner.  Gov't of Virgin Islands v.

Nicholas, 759 F.2d 1073, 1081 (3d Cir. 1985).

The appropriate measure of attorney performance is

"reasonableness under prevailing professional norms." Strickland,

466 U.S. at 688.  A petitioner asserting a claim of ineffective

assistance of counsel must "identify the acts or omissions of

counsel that are alleged not to have been the result of reasonable

professional judgment." Id. at 690.  Courts must generally

recognize the strong presumption that counsel has rendered

adequate assistance and that all significant decisions were made

in the exercise of reasonable professional judgment.  Id. at 689;

see Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999); Reese v.

Fulcomer, 946 F.2d 247, 256-57 (3d Cir. 1991); United States v.

Gray, 878 F.2d 702, 710 (3d Cir. 1989).  The evaluation of the

objective reasonableness of counsel's performance must be made

"from counsel's perspective at the time of the alleged error and

in light of all the circumstances, and the standard of review is

highly deferential." Kimmelman v. Morrison, 477 U.S. 365, 381

(1986).

The second prong of the Strickland test requires the
petitioner to show that counsel's deficient performance
prejudiced the defense.  Thus, "[a]n error by counsel, even if
professionally unreasonable, does not warrant setting aside the
judgment of a criminal proceeding if the error had no effect on
the judgment."  Strickland, 466 U.S. at 691.  The petitioner must
show that "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different."  Id. at 694.

The Strickland Court further held that both prongs must be
established to meet the petitioner's burden, and that if either
prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance
> component of an ineffectiveness claim prior to the
> prejudice component, there is no reason for a court
> deciding an ineffective assistance claim to
> approach the inquiry in the same order or even to
> address both components of the inquiry if the
> defendant makes an insufficient showing on one. . .
> . If it is easier to dispose of an ineffectiveness
> claim on the ground of lack of sufficient
> prejudice, which we expect will often be so, that
> course should be followed.  Courts should strive to
> ensure that ineffectiveness claims not become so
> burdensome to defense counsel that the entire
> criminal justice system suffers as a result.

Id. at 697.

The Court must accept the truth of the petitioner's non-
frivolous factual allegations and examine them to see if those
claims conclusively satisfy both prongs of the Strickland test.
The Court, of course, can reject clearly frivolous claims, Gov't

28

of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1998), and
dispose of vague or unelaborated assertions as insufficient.
Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v.
Dawson, 857 F.2d 923, 928 (3d Cir. 1988).

## A.   Failure to argue for concurrent sentences

We address petitioner's second-asserted claim first, as it
appears frivolous on its face in light of the record and the
uncontroverted facts.  It is true that defense counsel did not
argue for a concurrent sentence of imprisonment when petitioner
appeared in this Court and pled guilty and was sentenced for his
violation of supervised release.  Such an argument would have
been useless because the Pennsylvania Court had already expressly
ruled that the one to three year term of imprisonment it imposed
on the Pennsylvania charges was to run consecutive to any term of
imprisonment imposed in federal court.  (See PA Sen. Hearing at
11-13; 2-11-08 Criminal Court Sheet at 2.)  That fact was made
clear to petitioner at his guilty plea hearing in this Court,
when we directed defense counsel to read into the record, before
petitioner entered any plea of guilty here, the entirety of the
sentencing decision of the Pennsylvania Court.  (D.N.J. dkt. 11
at 14-17.)  This Court took that extra precaution precisely to
dispel any illusions petitioner may have harbored that he might
receive a concurrent sentence here.

We find that on this issue, the AFPD's failure to argue for
a concurrent VOSR sentence of imprisonment was entirely

29

appropriate conduct as petitioner's counsel.  We further find that if the AFPD had attempted to argue for a concurrent sentence here, petitioner can show no prejudice because the result of the proceeding would not have been different.  Strickland, 466 U.S. at 694.  This Court would not have imposed a concurrent sentence in the face of the express ruling of the Pennsylvania Court that the imprisonment term of its sentence would run consecutive to any sentence of imprisonment we would impose.  This position is also consistent with the Guidelines policy "that the sanction imposed upon revocation is to be served consecutively to any other term of imprisonment imposed for any criminal conduct that is the basis of the revocation."  USSG Ch.7, Pt.B, intro. comment.[14]

**B.   Failure to file a direct appeal**

Petitioner also complains of the failure of defense counsel to file an appeal, notwithstanding his alleged request that counsel do so.  (Mot., dkt. 1 at 5.)  Nowhere does petitioner state what issues he would have raised on direct appeal.  The motion itself is silent beyond the bare assertion that he instructed his counsel to file an appeal, and petitioner filed no supporting brief or reply brief at all.  We are mindful, however,

---

[14]   There can also be no issue whether a supervisory portion of our VOSR sentence should have run concurrent with the two year probationary portion of the sentence imposed by the Pennsylvania Court.  This Court imposed no further federal supervised release upon petitioner at the end of the four year term of imprisonment for his violation of supervised release.  (Dkt. 11 at 42.)

that the Supreme Court has given the right to appeal special significance as it relates to claims of ineffectiveness of counsel, under its decision in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000).

Respondent in <u>Flores-Ortega</u> pled guilty to state charges and was sentenced.  About four months after sentencing, he tried to file a notice of appeal <u>pro se</u>, which was rejected as untimely. His efforts led to a federal habeas petition, where the federal district court conducted an evidentiary hearing with inconclusive results.  The petition was denied, but the Ninth Circuit reversed.  The Supreme Court granted certiorari to resolve a split in the circuits regarding counsel's obligations to file a notice of appeal.  <u>Id.</u> at 474-76.

The holding in <u>Flores-Ortega</u> is in several parts.  First, the Court reiterated that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  <u>Id.</u> at 477 (citing <u>Rodriquez v. United States</u>, 395 U.S. 327 (1969)("[F]iling a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.")).  On the other hand, the Court observed, "a defendant who explicitly tells his attorney <u>not</u> to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."  <u>Id.</u> (citing <u>Jones v. Barnes</u>, 463 U.S.

31

745, 751 (1983)).  The "performance" question presented in
Flores-Ortega, the Court said, "lies between those poles:  Is
counsel deficient for not filing a notice of appeal when the
defendant has not clearly conveyed his wishes one way or the
other?"  Id.  That led to a further question, which the Court
said "lies at the heart of this case:  Under what circumstances
does counsel have an obligation to consult with the defendant
about an appeal?"  Id. at 478.[15]  On that question the Court held:

> Because the decision to appeal rests with the
> defendant, we agree ... that the better practice is for
> counsel routinely to consult with the defendant
> regarding the possibility of an appeal....  We cannot
> say, as a constitutional matter, that in every case
> counsel's failure to consult with the defendant about
> an appeal is necessarily unreasonable, and therefore
> deficient....  We therefore reject a bright-line rule
> that counsel must always consult with the defendant
> regarding an appeal.
>
> We instead hold that counsel has a constitutionally
> imposed duty to consult with the defendant about an
> appeal when there is reason to think either (1) that a
> rational defendant would want to appeal (for example,
> because there are non-frivolous grounds for appeal), or
> (2) that this particular defendant reasonably
> demonstrated to counsel that he was interested in
> appealing.  In making this determination, courts must
> take into account all the information counsel knew or
> should have known....  Only by considering all relevant
> factors in a given case can a court properly determine
> whether a rational defendant would have desired an
> appeal or that the particular defendant sufficiently
> demonstrated to counsel an interest in an appeal.

Id. at 479-80.

_____

[15]  "We employ the term 'consult' to convey a specific
meaning -- advising the defendant about the advantages and
disadvantages of taking an appeal, and making a reasonable effort
to discover the defendant's wishes."  Id.

Moving to the "prejudice" part of the Strickland test, the
Court in Flores-Ortega reviewed its precedent holding that "the
complete denial of counsel mandates a presumption of prejudice
because 'the adversary process itself' has been rendered
'presumptively unreliable.'" Id. at 483 (quoting United States v.
Cronic, 466 U.S. 648, 659 (1984)).  It then declared, "[t]he even
more serious denial of the entire judicial proceeding itself,
which a defendant wanted at the time and to which he had a right,
similarly demands a presumption of prejudice.  Put simply, we
cannot accord any 'presumption of reliability'... to judicial
proceedings that never took place."  Id. (quoting Smith v.
Robbins, 528 U.S. 259, 286 (2000)).  The holding of the Flores-
Ortega Court on the "prejudice" test was:

> [W]e hold that, to show prejudice in these
> circumstances, a defendant must demonstrate that there
> is a reasonable probability that, but for counsel's
> deficient failure to consult with him about an appeal,
> he would have timely appealed.
> ....
> Today, ... we hold that when counsel's constitutionally
> deficient performance deprives a defendant of an appeal
> that he otherwise would have taken, the defendant has
> made out a successful ineffective assistance of counsel
> claim entitling him to an appeal.

Id. at 484.

In so ruling, the Court pointedly observed that "[a]s with
all applications of the Strickland test, the question whether a
given defendant has made the requisite showing will turn on the
facts of a particular case."  Id. at 485.  It mentioned some of

33

the factors that might be considered in making the factual findings. Id. at 485-86. But it cautioned against concluding that defendant would not have appealed just because the Section 2255 motion does not identify meritorious issues for appeal.[16] The ruling in Flores-Ortega was a rejection of the factual findings of the district court as not focused on the proper inquiry (even though an evidentiary hearing had been conducted), and a remand for "further proceedings consistent with this opinion." Id. at 487.

Case law applying Flores-Ortega has demonstrated that a properly focused evidentiary hearing is generally necessary to determine whether a claim of this type can be sustained by the petitioner. See, e.g., Lewis v. Johnson, 359 F.3d 646, 659-62 (3d Cir. 2004) (habeas petition granted based upon factual analysis by Third Circuit where two evidentiary hearings were conducted in state proceedings that were sufficient for Circuit to adjudicate rather than remanding; the relevant events occurred 16 years earlier); Harrington v. Gillis, 456 F.3d 118, 128-31 (3d Cir. 2006) (remanding habeas petition for further development of the record on issues related to prejudice prong of Flores-Ortega

---

[16]   "We similarly conclude here that it is unfair to require an indigent, perhaps pro se, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal. Rather, we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed." Id. at 486.

test; stating that district court also incorrectly treated as dispositive the potential merit of petitioner's unfiled appeal); United States v. Wright, 180 Fed.Appx. 348 (3d Cir. 2006) (affirming denial of Section 2255 petition based upon evidentiary hearing and findings of district court); see also United States v. Poindexter, 492 F.3d 263, 266-73 (4th Cir. 2007) (remanding for evidentiary hearing on whether the defendant instructed his attorney to file a notice of appeal); United States v. Tapp, 491 F.3d 263 (5th Cir. 2007) (same); Campusano v. United States, 442 F.3d 770, 773-77 (2d Cir. 2006) (same); Gomez-Diaz v. United States, 433 F.3d 788, 791-94 (11th Cir. 2005) (same); United States v. Sandoval-Lopez, 409 F.3d 1193, 1195-99 (9th Cir. 2005) (same); United States v. Garrett, 402 F.3d 1262, 1264-67 (10th Cir. 2005) (same).

A few decisions under Flores-Ortega have not expressly noted that an evidentiary hearing was conducted, but in those cases the rulings have generally gone in favor of petitioners on an existing record that the Court of Appeals found strongly established ineffective assistance of counsel in not filing the notice of appeal.  See, e.g., United States v. Shedrick, 493 F.3d 292, 300-02 (3d Cir. 2007) ("Shedrick expressly wrote to the District Judge that his counsel failed to consult with him during the appeal period.  Moreover, even if counsel did so, there is little question he was ineffective in failing to file a timely

appeal, as Shedrick had stated that he wished to appeal while that option was available."); Hodge v. United States, 554 F.3d 372, 379-81 (3d Cir. 2009) (deciding deficient performance and prejudice issues in favor of petitioner on existing court record); Velazquez v. Grace, 277 Fed.Appx. 258 (3d Cir. 2008) (same).

We have carefully considered this case in view of the teachings of Flores-Ortega and its appellate progeny.  This Court concludes that despite the bare allegations provided by petitioner here, an evidentiary hearing will be necessary on his allegation that he received ineffective assistance of counsel because "[c]ounsel failed to file a direct appeal as I instructed him to do."  (Mot., dkt. 1 at 5.)

The next steps will be to appoint counsel for petitioner, allow a counseled petition to be filed if appropriate, then conduct the hearing as soon as practicable after giving the attorneys adequate time to investigate and prepare.  See Rule 8 of the Rules Governing Section 2255 Proceedings.

An appropriate Order accompanies this Memorandum Opinion.


       s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    December 30, 2010

36